**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| TRAVIS P. DELAGRANGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 1:20-CV-451-HAB |
| | ) | |
| WEAVER POPCORN | ) | |
| MANUFACTURING, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Plaintiff is salty after Defendant terminated his employment. He claims that he was fired

after reporting that his line leader was buttering him up, popping up randomly to harass him in a

sexual manner. Alternatively, Plaintiff believes that he was fired because of problems with his

ears. The Court finds that a jury could find that Plaintiff's complaint contains a kernel of truth, so

Defendant's motion for summary judgment will be denied.

**I.    Factual Background**

Defendant is a popcorn manufacturer with a production facility in Van Buren, Indiana.

Since 2018, Defendant has used Pro Resources, a temporary staffing agency, to find employees

for the facility. Plaintiff, assigned to the Van Buren facility in February 2019, was one of those

employees.

Plaintiff was a machine operator in the Ready-To-Eat ("RTE") department. He operated

and maintained the production equipment. He also performed quality checks on the popcorn.

Plaintiff had four people to whom he reported: a Pro Resources employee; his line lead, Ryan

Bowser ("Bowser"); and his team leads, Patrick Seymoure ("Seymoure") and Randy Brown

("Brown"). None of these individuals had the final say whether Plaintiff would be hired, fired,

promoted, or demoted by Defendant. That said, Bowser completed Plaintiff's employee evaluations and could discipline Plaintiff.

Early in his assignment, Plaintiff reported that he had hearing difficulties and would need to wear over-the-ear protection[1]. Defendant accommodated Plaintiff by allowing him to wear the protection and by approving time off when Plaintiff had a hearing-related doctor's appointment.

Plaintiff had two instances of discipline during his time with Defendant. In one instance, Plaintiff was disciplined after an interaction with a co-worker with whom he was "irritated" because she was not helping. Plaintiff admits that he was "written up" for this interaction but denies that the interaction was heated. For its part, Defendant states that Plaintiff received only a verbal warning for this incident. In a second instance that occurred in August 2019, Plaintiff yelled at a different employee to tell them to help clean up. Again, Plaintiff admits that he received a written warning for the way he interacted with others. The parties dispute how long the written warning should have remained in Plaintiff's file. Defendant claims that written warnings are maintained in employees' files for one year, while Plaintiff claims that the retention period is only three months.

Plaintiff experienced multiple, unwanted instances of sexual conduct by Bowser. Two or three times, Bowser stood with his crotch in Plaintiff's face while Plaintiff bent down to work on a machine. Bowser also grabbed Plaintiff's butt while the two were alone on the mezzanine level of the facility. Bowser also had the unwanted habit of striking employees, including Plaintiff, in the crotch with a lock attached to a retractable lanyard. On a couple of occasions when Plaintiff was standing on a ladder, Bowser would climb up the ladder behind Plaintiff and press his crotch into Plaintiff. Finally, Plaintiff believes that Bowser placed a sticker reading "Free Delicious Butt"

---

[1] Plaintiff could not wear ear plugs because of chronic sinus issues.

on Plaintiff's back. In short, Bowser acted as if Defendant's facility was his own middle school locker room.

In August 2019, Plaintiff met Zach Hoover ("Hoover"), a fill-in supervisor, and Seymoure. Plaintiff requested that he be moved to a different department but did not say why. The request was denied. Plaintiff also requested that Bowser attend the meeting to address the sexual harassment. This request was also denied.

In November 2019, Defendant performed hearing evaluations on every employee in the RTE department. It was Defendant's practice to perform these evaluations periodically due to the loud noise in the facility. Plaintiff's evaluation showed moderate hearing loss in his right ear, consistent with his condition when his assignment at the facility began.

It was also around this time that Plaintiff talked to Seymoure about Bowser's behavior. Plaintiff remembers telling Seymoure about the incident where Bowser grabbed Plaintiff's butt, but he does not recall if the other incidents were discussed. According to Plaintiff, this was one of several reports he made to Seymoure about the harassment.

Defendant terminated Plaintiff's assignment in December 2019. According to Defendant, the termination was part of a reduction in force caused by the end of production for a seasonal product. Defendant states that Plaintiff was chosen for termination because of "performance reasons." Plaintiff, of course, disagrees with the stated reason. He notes that he was placed in a supervisor's role during a week-long vacation taken by Bowser. He also points out that, sometime during his assignment, he was offered a fulltime position as a second shift line lead.[2] Instead, Plaintiff believes that he was fired because of his hearing problems or because he reported Bowser's harassment. Plaintiff also claims sexual harassment.

---

[2] Plaintiff was forced to turn down this position because, as a single father to a four-year-old daughter, he could not make the second shift schedule work.

## II.      Legal Analysis

### A.      *Defendant's Motion to Strike*

As part of its reply, Defendant asks the Court to disregard several statements from Plaintiff's affidavit. Defendant argues that Plaintiff's affidavit is a "sham" in that it contradicts his deposition testimony. The rule against sham affidavits provides that an affidavit is inadmissible when it contradicts the affiant's previous sworn testimony unless the earlier testimony was ambiguous, confusing, or the result of a memory lapse. *See*, *e.g*., *Cook v. O'Neill*, 803 F.3d 296, 298 (7th Cir. 2015). The rule is designed to avoid sham factual issues and prevent parties from taking back concessions that later prove ill-advised. *United States v. Funds in the Amount of $271,080*, 816 F.3d 903, 907 (7th Cir. 2016). The Seventh Circuit has emphasized that the rule is to be used with "great caution." *Id*. Thus, where the change is plausible or the party offers a suitable explanation for the change, the changes in testimony go to the witness' credibility rather than admissibility. *Id*.

The Court has reviewed the affidavit and the deposition excerpts identified by Defendant. Each time, the Court finds no contradiction. In the first example, Defendant argues that Plaintiff has improperly sought to add another instance of sexual harassment—the ladder crotch pressing. (*Cf*. ECF No. 19-5 at 21; ECF No. 27 at 3). True, this is not mentioned in Plaintiff's deposition, but that does not make it contradictory. It is simply more evidence. The same is true of the second example, where Defendant argues that Plaintiff has improperly added instances when he complained about the harassment. (*Cf*. ECF No. 19-5 at 19, 25; ECF No. 27 at 7). Again, Plaintiff testified to only one report in his affidavit, but nowhere in the affidavit does Plaintiff state this was his only report.

The third example is closer to a contradiction, but it's not quite there. Defendant argues that Plaintiff improperly adds testimony that several employees complained about Bowser hitting people in the crotch with his lock. Defendant claims that this contradicts Plaintiff's testimony that he didn't know of anyone reporting sexual harassment while he was assigned to Defendant's facility. (*Cf*. ECF No. 19-5 at 24; ECF No. 27 at 7). But divorced from the other instances described by Plaintiff, being hit in the crotch by a lock is more assault and less sexual harassment. If the other employees were not subject to the same laundry list of juvenile behavior that Plaintiff faced, they may not have perceived the isolated groin strikes as sexual harassment. In any event, the affidavit is not so contrary to the deposition as to constitute a sham.

In support of its arguments, Defendant points to *Amadio v. Ford Motor Co.*, 238 F.3d 919 (7th Cir. 2001). The Court finds *Amadio* to be distinguishable. There, the controlling question in the plaintiff's ADA case was whether the plaintiff had told anyone at his employer about his hepatitis diagnosis. He testified at his deposition that he had told no one that he was disabled and denied ever having a "difficult conversation" with his supervisor. *Id*. at 926. His affidavit, submitted in opposition to summary judgment, told a very different story. In the affidavit, the plaintiff testified that he had told his supervisor, "I'm blind in one eye, I just learned that I have hepatitis B so come on, give me a break and stop riding me about medical leaves." *Id*. at 925. The plaintiff then stated that his supervisor responded that hepatitis B was "contagious" and that the plaintiff "should not come around the Plant." *Id*. at 925-26. The Seventh Circuit held that the plaintiff "provided no acceptable explanation for his failure to describe [the supervisor's] alleged statements during his deposition," and refused to consider the affidavit testimony. *Id*. at 927.

The examples identified by Defendant do not come close to reaching the levels in *Amadio*. The plaintiff in *Amadio* directly contradicted his deposition testimony on the key issue presented

in the summary judgment. He created a conversation disclosing a disability despite denying that such a conversation took place. Nowhere in Plaintiff's deposition does he deny the positions he endorses in his affidavit. Nor are the instances in Plaintiff's affidavit dispositive of the issue presented to the Court. The situation here strikes the Court as little more than a person who remembered more information after his deposition concluded. That is not a basis to strike affidavit testimony, so the Court will consider the record as submitted in a light most favorable to Plaintiff.

**B.    *Summary Judgment Standard***

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must marshal and present the Court with evidence on which a reasonable jury could rely to find in their favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). A court must deny a motion for summary judgment when the nonmoving party presents admissible evidence that creates a genuine issue of material fact. *Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011) (citations omitted). A court's role in deciding a motion for summary judgment "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

Facts that are outcome determinative under the applicable law are material for summary judgment purposes. *Smith ex rel. Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997). Although a bare contention that an issue of material fact exists cannot create a factual dispute, a court must construe all facts in a light most favorable to the nonmoving party, view all reasonable inferences in that party's favor, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491–92 (7th Cir. 2000), and avoid

"the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). A court is not "obliged to research and construct legal arguments for parties, especially when they are represented by counsel." *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011).

## C.    *Plaintiff's ADA Claims*

Plaintiff first asserts that Defendant violated the ADA when it fired him because of his hearing problems. The ADA prohibits employers from discriminating against a "qualified individual" based on his disability. 42 U.S.C. § 12112(a). To prove a claim of disability discrimination, Plaintiff "must show that: (1) he is disabled; (2) he is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (3) the adverse job action was caused by his disability." *Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 503 (7th Cir. 2017) (citing *Roberts v. City of Chi.*, 817 F.3d 561, 565 (7th Cir. 2016)). The language of the ADA requires proof of "but for" causation. *See Silk v. Bd. Of Trs.,Moraine Valley Cmty .Coll,.Dist. No. 524*, 795 F3d 698, 705-06 (7th Cir. 2015).

Discrimination claims may be reviewed on summary judgment under the direct or the burden-shifting methodologies created by *McDonnell Douglas. v. Green*, 411 U.S. 792 (1973). *See David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017); *Smith v. Chicago Transit Auth.,* 806 F.3d 900, 905 (7th Cir. 2015) (noting the *McDonnell Douglas* framework is just "a formal way of analyzing a discrimination case when a certain kind of circumstantial evidence – evidence that similarly situated employees not in the plaintiff's protected class were treated better – would permit a jury to infer discriminatory intent."). When a plaintiff responds to a motion for summary judgment on an intentional discrimination claim by relying on the burden-shifting framework created by *McDonnell Douglas* a court should assess the case in

those terms. *Id.*; *see also Ferrill v. Oak-Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 499 (7th Cir. 2017) (noting that *McDonnell Douglas* burden-shifting analysis has not been displaced); When the plaintiff does not present his argument in opposition to summary judgment in those terms, the direct method of proof is the "default rule." *Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 880 (7th Cir. 2016) (quoting *Morgan v. SVT, LLC*, 724 F.3d 990, 997 (7th Cir. 2013)). Under that method, the test for whether a claim of intentional discrimination should proceed to a jury is whether the admissible evidence, considered as a whole, would permit a reasonable factfinder to conclude that the plaintiff's disability caused the adverse action.

In all cases, the question at summary judgment remains: "has the non-moving party produced sufficient evidence to support a jury verdict of intentional discrimination?" *David*, 846 F.3d at 224; *see also See Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016) (instructing courts to stop separating "direct" from "indirect" evidence and instructing, instead, that the test is "simply whether the evidence would permit a reasonable factfinder to conclude the plaintiff's [protected status] caused the discharge or other adverse employment action). *Liu v. Cook Cty.*, 817 F.3d 307, 315 (7th Cir. 2016) ("The proper question under either method is simply whether a reasonable trier of fact could infer retaliation or discrimination."); *Bass v. Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 840 (7th Cir. 2014) ("[T]he fundamental question at the summary judgment stage is simply whether a reasonable jury could find prohibited discrimination."). Plaintiff has not invoked the *McDonnell Douglas* framework. Regardless of whether the evidence is considered under the *McDonnell Douglas* framework or another framework, the evidence does not permit a reasonable factfinder to conclude that Plaintiff's disability was the reason for his termination.

8

The parties do not argue over the first two elements, so the Court will go straight to causation. The only evidence Plaintiff puts forward to show causation is that he was fired within weeks of the November 2019 hearing test. Of course, suspicious timing alone "will rarely be sufficient . . . to create a triable issue." *Argyropoulos v. City of Alton*, 539 F.3d 724, 734 (7th Cir. 2008) (quoting *Culver v. Gorman*, 416 F.3d 540, 546 (7th Cir. 2005)); *see also Burks v. Wisc. Dep't. of Trans.*, 464 F.3d 744, 758–59 (7th Cir. 2006) (explaining that "suspicious timing alone . . . does not support a reasonable inference of retaliation" because the "mere fact that one event preceded another does nothing to prove that the first event caused the second" (internal citation omitted)). With no other evidence supporting causation, Plaintiff's ADA claim was on thin ice from the start.

The rest of the record does nothing more to show causation. The facts show that Defendant was aware of Plaintiff's hearing issue from the beginning of his assignment. They had accommodated the issue for nearly ten months by the time of his firing, from allowing Plaintiff to wear over-the-ear protection and allowing time off for doctor's appointments. The November 2019 hearing test showed nothing that Defendant was unaware of from the start. Plaintiff does not explain, or designate evidence explaining, why a benign hearing test would cause his termination when exactly the same condition had been accommodated for almost a year. The evidence would not allow a reasonable jury to find that Plaintiff was terminated because of his hearing problems, so summary judgment will be entered in favor of Defendant on this claim.

**D.**     ***Plaintiff's Sexual Harassment Claim***

Plaintiff next alleges that Bowser's conduct created an actionable, hostile work environment. To establish a prima facie case of hostile work environment sexual harassment, an employee must establish that (1) he experienced unwelcome harassment (e.g., unwelcome sexual

9

advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature); (2) the harassment was based on his sex; (3) the harassment was sufficiently severe or pervasive to alter the condition of his employment and to create a hostile or abusive atmosphere; and (4) there is a basis for employer liability. *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 788 (7th Cir. 2007) (citing *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 940 (7th Cir. 2007)); *Whittaker v. Northern Illinois Univ.*, 424 F.3d 640, 645 (7th Cir. 2005).

Defendant challenges elements (2) and (3). Arguing that Bowser's conduct was not based on Plaintiff's sex, Defendant cites *Lord v. High Voltage Software, Inc.*, 839 F.3d 556 (7th Cir. 2016). In *Lord*, the plaintiff experienced four instances of unwanted sexual contact from a same-sex employee, all of which involved touching or grabbing the plaintiff's butt or groin. The plaintiff claimed that these incidents created a hostile work environment and brought a claim under Title VII. The district court granted summary judgment for the employer, and the plaintiff appealed.

On appeal, the Seventh Circuit found that claims of same-sex harassment are subject to a different analysis as those of opposite-sex harassment.

> Same-sex harassment claims are cognizable under Title VII provided that "the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted '*discrimina[tion]* . . . because of . . . sex.' " *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) (quoting 42 U.S.C. § 2000e–2(a)(1)) (alteration in original). Of course, that requirement applies to all claims of employment-based sexual harassment, whether same sex or opposite sex. *Id*. at 80, 118 S.Ct. 998 ("The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.") (quotation marks omitted). But in opposite-sex harassment cases involving "explicit or implicit proposals of sexual activity," the inference of discrimination is easier to draw because "it is reasonable to assume those proposals would not have been made to someone of the same sex." *Id*. The same does not hold true for same-sex harassment cases absent some evidence that the harasser was homosexual. *Id*.; *see also Hamm v. Weyauwega Milk Prods., Inc.*, 332 F.3d 1058, 1062 (7th Cir. 2003) ("Therefore, in same-sex harassment cases, the central question is whether the harassment occurred 'because of the plaintiff's sex.'").

*Lord*, 839 F.3d at 561-62.

There is no evidence in the record that Bowser was or is a homosexual, so something more is necessary for a finding that the harassment was because of Plaintiff's sex. On this point, the *Lord* court held:

> In *Oncale* [*v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75 (1998)] the Supreme Court offered two other examples of conduct that might support an inference of discrimination on the basis of sex in the context of a same-sex harassment claim. The first is when a harasser uses "such sex-specific and derogatory terms" as to make it clear that he "is motivated by a general hostility to the presence of [members of the same sex] in the workplace." *Oncale*, 523 U.S. at 80, 118 S.Ct. 998. The second is when the plaintiff offers "direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace." *Id*. at 80–81, 118 S.Ct. 998. We've noted in the past that there's no reason to think these examples are exhaustive. *Shepherd v. Slater Steels Corp.*, 168 F.3d 998, 1009 (7th Cir. 1999). "What matters . . . is not whether the facts . . . correspond exactly to any of the three examples the Supreme Court has identified, but whether a reasonable factfinder could infer from those facts that [the plaintiff] was harassed 'because of' his sex." *Id*.

*Lord*, 839 F.3d at 562.

Plaintiff points to nothing in the record that would suggest that Bowser directed the unwanted activities toward him because of his sex. The only argument he advances is that he "believed that Bowser was making a sexual advance." (ECF No. 29 at 3). That may be, but nothing in the record is "so explicit or patently indicative of sexual arousal that a trier of fact could reasonably draw that conclusion." *Lord*, 839 F.3d at 562. Plaintiff's sexual harassment claim must fail.

### E.   *Plaintiff's Retaliation Claim*

Finally, Plaintiff claims that he was fired in retaliation for reporting Bowser's conduct.[3] To show retaliation under Title VII, Plaintiff must show that (1) he engaged in a statutorily protected

---

[3] That Plaintiff's sexual harassment claim failed on the merits is irrelevant to the Court's analysis of his retaliation claim. *Place v. Abbott Labs.*, 215 F.3d 803, 806 (7th Cir. 2000).

activity; (2) he suffered a materially adverse action by his employer; and (3) a causal connection exists between the two. *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009). The parties agree that Plaintiff's termination constituted a materially adverse action, but the other elements are disputed.

Again relying on *Lord*, Defendant argues that Plaintiff did not engage in statutorily protected activity. *Lord* held:

> As we've already explained, although Lord's complaints concerned workplace banter and conduct that had sexual overtones, no evidence suggests that he was harassed because of his sex. Without evidence of a prohibited motive, Lord's belief that he was complaining about sexual harassment, though perhaps sincere, was objectively unreasonable. Accordingly, Lord's retaliation claim fails for lack of evidence that he engaged in protected activity.

*Lord*, 839 F.3d at 563. This paragraph supports Defendant's position. Even so, the Court does not believe that the paragraph represents the current state of the law.

The problem with this part of the *Lord* holding is that it relies almost entirely on the now-overruled *Hamner v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 224 F.3d 701 (7th Cir. 2000). *Hamner*, and specifically the paragraph of the case relied on by *Lord*, presumed that sexual orientation was not a classification protected under Title VII. *Hamner*, 224 F.3d at 707. Because of this lack of protection, *Hamner* held that complaints of same-sex harassment could not constitute statutorily protected activity because the complaining party could not reasonably believe that Title VII had been violated. *Id*. at 707-08.

*Hamner* is no longer good law—sexual orientation is protected by Title VII. *See Bostock v. Clayton Cty., Ga.*, 140 S.Ct. 1731 (2020). The logical basis for *Hamner*'s holding, that no one could reasonably believe that same-sex harassment violated Title VII, is similarly antiquated. Because the retaliation discussion in *Lord* relies on this antiquated view, the Court believes that it similarly misstates the current view of the law.

*Hamner* aside, Plaintiff must only show that he thought he was opposing a practice that violated Title VII. The Seventh Circuit has repeatedly held that "an employee may engage in statutorily protected expression under section 2000e–3(a) even if the challenged practice does not actually violate Title VII." *Dey v. Colt Const. & Dev. Co.*, 28 F.3d 1446, 1457 (7th Cir. 1994). It is sufficient if the plaintiff has a sincere and reasonable belief that he is opposing an unlawful practice. *Holland v. Jefferson Nat. Life Ins. Co.*, 883 F.2d 1307, 1314 (7th Cir. 1989); *see also Dey*, 28 F.3d at 1458. That means, for example, that even if the degree of discrimination does not reach a level where it affects the terms and conditions of employment, if the employee complains and the employer fires him because of the complaint, the retaliation claim could still be valid. Defendant does not challenge the reasonableness of Plaintiff's belief outside of its *Lord*-based argument. The Court, then, finds that Plaintiff's complaint about Bowser's conduct was statutorily protected activity. The Court will move on to causation.

As stated above, a plaintiff must prove that but for the protected act, he would not have suffered the adverse employment action. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013); *see also Cung Hnin v. TOA (USA), LLC*, 751 F.3d 499, 508 (7th Cir. 2014) ("Retaliation claims under Title VII require traditional but-for causation, not a lesser 'motivating factor' standard of causation.") (internal citation omitted). A plaintiff may present "smoking gun" direct evidence of causation which requires "something akin to an admission" of retaliation by an employer. *Hobgood v. Ill. Gaming Bd.*, 731 F.3d 635, 643 (7th Cir. 2013). A plaintiff may also show the requisite causal link by constructing a "convincing mosaic" of circumstantial evidence, relying on "suspicious timing, ambiguous statements [...], and other bits and pieces from which an inference of retaliatory intent might be drawn." *Id.* (quoting *Coleman v. Donahoe*, 667 F.3d 835, 860 (7th Cir. 2012)) (internal quotation marks omitted). A close temporal connection between the

13

protected act and the adverse employment action, without more, cannot support an inference of causation. *Turner v. The Saloon, Inc*., 595 F.3d 679, 687 (7th Cir. 2010).

One method available to a plaintiff trying to paint a convincing mosaic is designating evidence that the employer offered a pretextual reason for the adverse employment action. *Dickerson v. Bd. of Trs. of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011). Pretext means "a fabrication, designed to conceal an unlawful reason"; it is "something worse than a business error," where "deceit [is] used to cover one's tracks." *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 684 (7th Cir. 2000) (citation omitted). To show pretext, a plaintiff can present evidence showing that: (1) the defendant was "more likely than not motivated by a discriminatory reason"; or (2) the defendant's stated reason is not credible. *Alexander v. Wisconsin Dept. of Health and Fam. Servs*., 263 F.3d 673, 682 (7th Cir. 2001) (quoting *Sarsha v. Sears, Roebuck & Co*., 3 F.3d 1035, 1039 (7th Cir. 1993)). When considering pretext at the summary judgment stage, "the only question before [the Court] is whether the plaintiff has provided evidence from which a rational trier of fact could infer that the employer's stated reasons for taking the adverse action were lies." *Alexander*, 263 F.3d at 683. "In determining whether the employer's reason can be characterized as pretextual, we do not evaluate whether the employer's proffered justification was accurate or even whether it was unfair. Our sole focus is on whether the employer's stated reason can be characterized as a falsehood rather than an honestly held belief." *Robertson v. Dep't of Health Servs*., 949 F.3d 371, 378 (7th Cir. 2020); *see also Seymour-Reed v. Forest Pres. Dist. of DuPage Cnty.*, 752 F. App'x 331, 335 (7th Cir. 2018) ("[A] pretext analysis evaluates the honesty of the employer's explanation, not its validity or reasonableness.").

The Court finds that Plaintiff has designated evidence creating a genuine issue of material fact about whether Defendant's proffered reason for termination was pretext. Simply put, there is

no evidence in the record to show that Plaintiff had "performance" problems that would support termination. Plaintiff's two disciplinary incidents were unrelated to his job performance. Instead, they related solely to his interaction with his co-workers. And other than these two incidents, the record lacks any deficiencies in any aspect of Plaintiff's employment.

On the other hand, Plaintiff has designated evidence that his job performance was exemplary. He was left in charge of the floor when Bowser took a week's vacation and was praised for his performance. Plaintiff was offered a fulltime job on second shift, a job that came with a $4.00 per hour raise. These facts go against performance that was so bad as to warrant termination.

Defendant attempts to extricate itself from these facts by arguing that the final decisionmaker was unaware of Plaintiff's complaints. When supported by evidence, such an argument can defeat a retaliation claim. *See Eaton v. J. H. Findorff & Son, Inc.*, 1 F.4th 508, 512-13 (7th Cir. 2021). And Defendant has designated the affidavit of Wesley Johnson ("Johnson"), its Operations Manager, who states that he "made the final decision to approve Plaintiff's termination without any knowledge that he had made a report of alleged harassment and/or discrimination." (ECF No. 34-1 at 2). This would normally be enough to avoid liability.

Here, however, the affidavit says more. Johnson's affidavit states that he "approved" Plaintiff's termination. (*Id*. at 1). The reasonable inference from this statement is that Johnson received a recommendation to fire Plaintiff. Another reasonable inference is that this recommendation would have come from Plaintiff's supervisors—individuals who were either harassing him or receiving the reports of harassment.

Johnson's affidavit, then, raises the specter of the cat's paw theory of liability. This theory applies when a biased supervisor "who lacks decisionmaking power uses the formal decision maker as a dupe in a deliberate scheme to trigger a discriminatory employment action." *Johnson*

*v. Koppers, Inc*., 726 F.3d 910, 914 (7th Cir. 2013) (internal quotation marks omitted). Of course, there are defenses to the cat's paw theory, particularly that the decision to fire was made independently of any input from a biased supervisor. *Vesey v. Envoy Air, Inc.*, 999 F.3d 456, 462 (7th Cir. 2021). But neither Johnson's affidavit, nor any other evidence in the record, explains the decision-making process that led to Plaintiff's termination.[4] Without that evidence, the Court finds that a trial is necessary.

### III.  Conclusion

For these reasons, the Court GRANTS in part and DENIES in part Defendant's Motion for Summary Judgment (ECF No. 18). The motion is GRANTED on Plaintiff's claims of ADA discrimination and sexual harassment. The motion is DENIED in all other respects.

SO ORDERED on August 3, 2022.

 s/ Holly A. Brady
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT

---

[4] The Court also notes that Johnson's affidavit does not state *why* he decided to terminate Plaintiff. There is no indication that Johnson reviewed Plaintiff's job performance, or any other metric, before deciding to fire him.